IRWIN v. SIMON et al.

(Supreme Court, Appellate Division, First Department.　December 30, 1915.)

1. LANDLORD AND TENANT ⟨⟩165—TENANT FACTORIES—STAIRWAYS.

Labor Law (Consol. Laws, c. 31), § 94, defining tenant factories, expressly imposes the duty of maintaining stairs with steps and handrails, as prescribed by section 80, on the owner, as well as on the tenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630, 631, 633–637, 640, 641; Dec. Dig. ⟨⟩165.]

2. EVIDENCE ⟨⟩155—EVIDENCE ADMISSIBLE BY REASON OF ADMISSION OF EVIDENCE OF ADVERSARY.

In an employé's action for damages for personal injury by falling from a stairway in a factory building, brought against her employer, the tenant, and against the owner, where a witness for defendant, who had constructed the stairway, testified that its construction was the same as usual in similar cases, and that the railing on the stairway was constructed to prevent its users from falling off the side, rather than for use as a handrailing, and where the owner's secretary testified as to his measurement of the height of lights over the stairways, and that the steps and light fixtures were the same and in the same position when he made the measurements as at the time of the accident, his testimony did not open the door for plaintiff's showing that steel treads had been substituted for slate treads a year before the trial and that a handrailing had been constructed on the stairs, so that its admission was prejudicial error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458, 2148; Dec. Dig. ⟨⟩155.]

Appeal from Trial Term, New York County.

Action by Mary Irwin against Franklin Simon, impleaded with the J. J. Steindler Company. From a judgment entered upon a verdict in favor of the plaintiff, subsequently set aside as against defendant Simon, whose motion to dismiss the complaint was granted, and from an order denying its motion for a new trial, the impleaded defendant appeals. Judgment and order reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Lyman A. Spalding, of New York City, for appellant.

George J. Gillespie, of New York City (William F. Delaney of New York City, on the brief), for respondent.

LAUGHLIN, J. This action was brought to recover damages for personal injuries sustained by the plaintiff by falling while descending a stairway from the ground floor to the basement in a building on premises known as Nos. 8–14 West Thirty-Eighth street, borough of Manhattan, New York, on the 11th day of June, 1910. The building, which was 12 stories high and was occupied by five tenants, was owned by the appellant, and the individual defendants were copartners engaged in business under the name of Franklin Simon & Co., and occupied, under a lease from the appellant's predecessor in interest, part of the basement, part of the first floor, and the second, fifth, and sixth floors of the building. The plaintiff was at the time of the accident, and for upwards of two years had been, in the employ of Franklin Simon & Co. She alleges that she was obliged in the performance of her

duties to use the stairway, and that it was the duty of her employers to furnish a suitable, safe, and secure stairway; that the building was used for the manufacture of women's wearing apparel, and that it was the duty of all the defendants to provide and maintain a safe stairway with *proper and suitable handrails;* that the steps of the stairway provided were too narrow, and had sharp, dangerous, unlighted, and improperly and defectively lighted curves, without safe treads; and that the stairs were wet and slippery, and were maintained and permitted to remain by defendants in an unsafe, improper, and dangerous condition.

The defendant Flurscheim died pending the action, and it was continued against his surviving partner, Simon. A general verdict was rendered against Simon and appellant; but the court subsequently set aside the verdict as against Simon, and granted a motion to dismiss the complaint made in his behalf, the decision on which had been reserved.

The lease of the premises to Franklin Simon & Co. was made on the 14th day of September, 1909, and it provided that they were to be used "for the manufacture and alteration of wearing apparel." The court on sufficient evidence submitted it to the jury to determine whether the building was used as a factory, and instructed them that, if the building was used as a factory, it was the duty of the defendants under the law to provide "proper and suitable handrails on all stairways in the factory," and left it to the jury to determine whether proper and suitable handrails were provided on the stairway in question, and instructed them that, if they found in the negative on that issue, that would be some, but not conclusive, evidence of negligence. The court further instructed the jury that, if they found that the building was not a factory, then the rule of law applicable would be that requiring ordinary care in the construction and maintenance of the stairway, it being the duty of the defendants to construct and maintain a reasonably safe stairway, and that if they did that they could not be held liable.

The uncontroverted evidence showed, and the court instructed the jury, that the stairway was cleaned, and the lights thereon were maintained, and the elevator and elevator employés in the building were employed, by the appellant. It also appeared that appellant duly excepted to the court's leaving it to the jury to determine whether the building, as used and occupied, was a factory, within the meaning of the Labor Law, and whether the appellant furnished a proper and suitable handrail, or a reasonably safe and proper stairway. Section 80 of the Labor Law (chapter 31, Consolidated Laws) required that "proper and substantial handrails shall be provided on all stairways in factories"; and section 2 of the same law provided as follows:

"The term 'factory,' when used in this chapter, shall be construed to include also any mill, workshop, or other manufacturing or business establishment where one or more persons are employed at labor."

Section 94 of the Labor Law provided, in part, as follows:

"A tenant factory within the meaning of the term as used in this chapter is a building, separate parts of which are occupied and used by different persons, companies or corporations, and one or more of which parts is so used as to

constitute in law a factory. The owner, whether or not he is also one of the occupants, instead of the respective lessees or tenants, shall be responsible for the observance and punishable for the nonobservance of the following provisions of this article, anything in any lease to the contrary notwithstanding, namely, the provisions of sections * * * eighty," etc.

About 1,500 employés worked for Franklin Simon & Co. on these and adjoining connected premises, quite a number of whom were engaged in manufacturing and altering women's wearing apparel on the fifth floor of the premises in question.

[1] The appellant in its main points made no complaint of the instructions of the court with respect to the application of the Labor Law to this case; but in its points in reply it takes the position that the duty of complying with the Labor Law devolved upon the plaintiff's employer, and that that question was eliminated by the dismissal of the complaint as to him. By the express terms of the statute the Labor Law, if applicable at all, imposes the duty of compliance therewith on the owner, as well as on the tenant. The learned counsel for the appellant does not argue the point, but he contends that, if the Labor Law was applicable, there was a compliance with its provisions. The plaintiff and very many other employés of Franklin Simon & Co. were obliged to descend to the basement and there report their arrival for work in the morning; and the stairs in question were used quite extensively by employés for this and other purposes. Most of the employés entered the building at the Thirty-Eighth street entrance, as did the plaintiff. Evidently some used the elevator, but many of them used the stairs. At the right of the hallway, as they entered the building, there was a door opening to the stairway descending to the basement. The stairs were 3 feet and 7 inches wide. From the landing at the top the descent was first by two steps, the treads of which were 10½ inches in depth for the entire width of the stairs. Then came three fan-shaped steps, the tread of which at the newel post on the right was only 2 or 3 inches in depth, but at the extreme left was quite deep, and they changed the course of the stairs 90 degrees, or from west to north. From that point the descent was north by three steps, the tread of which was of equal depth for the entire width of the stairs; and then there was a turn of 90 degrees to the east, formed by three steps like the other fan-shaped steps, and the remaining part of the descent was made by five steps, the tread of which was of uniform depth, to the floor of the basement. On the left side of the stairs as one descended there was a wall the entire distance; and on the right there was a wall down to the first curve, and from there on there was a wooden handrail resting on iron grill work. The tread of the stairs was smooth slate.

The plaintiff testified that the stairs were so narrow that there was not room for two persons to pass while both were moving and that one would have to "stand by." There was a cluster of lights in the main hallway; but the evidence tends to show that they were not lighted at the time of the accident, and, if lighted, the light would shine only on the top steps and part of the first and second steps in the first curve. There was a 16 candle power electric light between 7 and 8 feet above the upper winding steps, but the evidence shows that it was not lighted. There was another light 9 feet and 2 inches distant

therefrom over the other winding steps. The plaintiff testified that she observed that this light was lighted, but she further testified that everything "was dark, and there seemed to be a fog pouring right up those stairs, * * * a fog, or a steam." It was a rainy morning. The plaintiff further testified that the steps were wet and slippery; that she was holding her skirt with her right hand; that she observed that the first light was not lighted, and that after stepping down upon the first step she determined to proceed down on the right side, where she might have the railing for protection; that she had always before gone up and down on the other side, where the tread of the steps was wide, and she says:

"I proceeded to go down the stairs with my right hand, outstretched, so as to have it ready to get the railing, when I got as far as that my left foot was on one of the steps of the curve, * * * as I was swinging on the left, the arch of the right went over the step, and I lost footing. I had just about gotten my fingers on the railing at the time my footing was lost."

She further testified that she had her umbrella in her left hand and could see the curve, but that everything was dim, and that she fell to the bottom of the stairs.

[2] One Rosenthal, who constructed the stairway, was called as a witness by the defendant Simon, and testified that the construction was the same as is usual in similar cases. He was interrogated by the court as to why he did not construct the handrailing on the left side, where those using the stairs would likely walk, owing to the narrowness of the tread on the curves at the right. His answer tended to show that the railing was constructed to prevent those using the stairs from falling off at the side, rather than for use as a handrail. The appellant called its secretary, who testified to measurements as to the height of the two lights over the stairs. As a basis for those measurements, he testified that the steps and electric light fixtures were the same and in the same position at the time he made the measurements as at the time of the accident. On cross-examination, after the witness had been asked what was the present construction "in regard to the handrail," and that had been objected to as incompetent, and the testimony of the witness on direct examination had been read, the court asked the witness, in substance, whether there had been any change in or about the steps, and refused to permit counsel for appellant to enter an objection to the question, and confined him to taking an exception. The witness answered in the affirmative. The court then, over appellant's objection and exception, permitted the respondent to show that steel treads were substituted for the slate treads about a year before the trial and more than four years after the accident, and also that a handrailing had been constructed on the left side of the stairs for the entire length.

This evidence was admitted by the court on the theory that the appellant, by showing that the position of the steps and the lights was the same at the time the witness made the measurements with respect to the location and height of the lights, had opened the door therefor. We think that the court erred in so ruling. The door had not been opened, and the evidence was most damaging. It not only showed

that it was practicable to construct a handrail there, but that the appellant, at whose expense it was constructed, realized and thereby admitted that the stairs were unsafe without it. The learned court endeavored in the charge to persuade the jury that this evidence should not be considered as bearing on the question as to whether defendants were negligent. But it is manifest that, in determining whether the defendants complied with the statutory requirement of providing proper and suitable handrails on this stairway, the jury did not exclude from consideration this incompetent evidence thus erroneously received.

It follows that the judgment and order must be reversed, and a new trial granted, with costs to appellant to abide the event. Order filed.

INGRAHAM, P. J., and SCOTT and DOWLING, JJ., concur.

McLAUGHLIN, J. I concur in the reversal of the judgment, and vote for a dismissal of the complaint.